UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BUNZL DISTRIBUTION USA, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 4:05CV605 JCH |
| | ) |
| JOHN SCHULTZ, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Bunzl Distribution USA, Inc.'s ("Bunzl") Motion for Summary Judgment (Doc. No. 81), filed October 23, 2006. The matter is fully briefed and ready for disposition.

**BACKGROUND**

A detailed background of this case is contained in the Court's Order of August 7, 2006. (Doc. No. 65). The Court will discuss new, relevant facts when necessary.

**SUMMARY JUDGMENT STANDARD**

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477

1

U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## **DISCUSSION**

### **Count I of Plaintiff's Complaint**

In its previous Order, the Court granted in part and denied in part summary judgment on Count I of the Complaint. (Order, Doc. No. 65, pg. 24-25). The Court held that the Schultz Defendants[1] were liable to Bunzl under the Indemnity Agreement for the $500,000 Cellynne payment. (Id.). An issue of fact remained regarding whether the Schultz Defendants were liable to Bunzl under the Indemnity Agreement for the $100,000 Roses payment. (Id.). The Court found: "[t]hus, the evidence before the Court shows that Roses demanded payment from Bunzl of $100,000 for products

---

[1] The Court will refer to Defendants John Schultz, Marcia Schultz, Allen Schultz, and Jane Schultz as the "Schultz Defendants," and will refer to all defendants collectively as "Defendants." The Court will refer to Defendant Graymark Tissue Company Inc. as "Graymark."

2

ordered and received, and Graymark owed Roses $100,000 for an unknown reason." (Id.).

In a recent deposition, John Schultz ("Schultz") admits that as of March 16, 2005, Graymark owed Roses over $160,000 for products ordered by Graymark and delivered by Roses to Bunzl. (Pl.'s Statement of Uncontroverted Material Facts, Doc. No. 83 ¶ 116-17, citing Ex. E at pg. 266-269 and Dep. Ex. 48). Although Graymark asserts that it "specifically opposes Plaintiff's Statement of Material Facts paragraph[] ... 117," it provides no evidence to controvert paragraph 117.

The Court finds that no genuine issue of fact exists regarding the $100,000 payment by Bunzl to Roses. The evidence shows that Graymark owed Roses because of products it ordered for Bunzl. Thus, the Schultz Defendants are liable under the Indemnity Agreement for both the $500,000 and $100,000 payments.

**Count II of Plaintiff's Complaint**

In its previous Order, the Court denied Bunzl's claim of unjust enrichment, reimbursement, and subrogation to prevent a double recovery by it. (Order, Doc. No. 65, pg. 25). Bunzl argues that the Court misinterpreted its Complaint because Count I was directed solely at the Schultz Defendants whereas Count II was directed solely at Graymark, which is liable in equity as the principle debtor. (Memo. in Supp., No. 82 pg. 5). Defendants do not deny Graymark's liability; rather, they argue awarding $600,000 in both Count I and II is improper. (Memo. in Opp'n, Doc. No. 84 pg. 3).

Missouri follows the rule that "where a guarantor pays the debt of the principal debtor the law implies a promise of reimbursement, and the action is based on equitable principles." Gibson v. Harl, 857 S.W.2d 260, 268 (Mo. Ct. App. 1993)(citing In re Jamison's Estate, 202 S.W.2d 879 (Mo. 1947)). Neither side disputes that Graymark actually owed the money to Roses and Cellynne. Furthermore, the Court has found that Bunzl made payments totaling $600,000 under their Guaranties. Thus, Graymark is also liable for the payments of $600,000 as well.

It is well settled Missouri law that Bunzl cannot be compensated for the same injury twice. See MECO Sys., Inc. v. Dancing Bear Entm't, Inc., 42 S.W.2d 794, 810-11 (Mo. Ct. App. 2001)(citing Stiffelman v. Abrams, 655 S.W.2d 522, 533 (Mo. 1983)). In order to prevent a double recovery, the Court will enter judgment against Defendants jointly and severally on Counts I and II for $600,000 plus prejudgment interest of $147.95 a day.[2]

**Count III of Defendant's Counterclaim**

In its August 7, 2006 order, the Court denied Bunzl's Motion for Summary Judgment on Graymark's breach of fiduciary duty claim. (Doc. No. 65 pg. 15-16). Bunzl contends that the depositions of John and Marcia Schultz show no evidence exists that Bunzl managed or controlled Graymark's business.[3]

In January 2003, the Schultz Defendants proposed, and Bunzl agreed to, the value tissue program. (Def.'s Statement of Material Facts, Doc. No. 85 ¶ 36-43). Defendants contend that they proposed this program because their relationship with Bunzl had become too "one-sided"[4] and they trusted that Bunzl would treat them fairly. (Id. at Ex. B, pgs. 28-33)

After entering into this agreement, Bunzl's alleged control of Graymark began.[5] According

---

[2] The amount of daily interest was calculated using the formula described in the Court's previous order ($600,000 times 0.09 divided by 365).(Doc. No. 65 pg 26-27).

[3] Bunzl also argues that Defendant cannot prove a breach of fiduciary duty. Bunzl does not present any new evidence to persuade the Court that it should reconsider its previous holding.

[4] During the 1990's, while the Schultz Defendants ran Shelby Tissue, Bunzl pressured them into selling tissue products through it instead of directly to Economy Cash & Carry. (Doc. No. 85, Ex. B at pgs. 28-33). According to the Schultz Defendants, Economy Cash & Carry was one of its most lucrative clients, at one point generating $4,000,000 a year for them. (Id. at ¶ 26).

[5] Neither party disputes that prior to the value tissue program in 2003-2004, Bunzl did not control or manage Graymark. (Pl.'s Statement of Uncontroverted Material Facts, Doc. No. 83 ¶ 43).

4

to Schultz, Bunzl required Graymark to acquire office space[6] and later authorized Graymark to move its office space from New York to Harrison. (Id. at pg. 153-55). Schultz also testified that Bunzl told Graymark with whom to do business, what suppliers it could use, and had access to its customer lists. (Id. at pg. 146-148, 152-53). He also asserts that, even though Graymark did not want to do so, Bunzl required it to sell exclusively to it, which led Graymark to lose all of its other business. (Id. at pg. 148-50). Additionally, he maintains Bunzl usurped Graymark's duties by directly negotiating terms with the suppliers. (Id. at pg. 183). Finally, Schultz testified that Graymark negotiated with two suppliers, Cellyne and Roses, to cut Graymark's rebate from three percent to two percent in order to smooth over some difficulties. (Id. at pg. 246). Bunzl, however, chastised Graymark and asked them to change the rebate back, which it did.(Id.).

Bunzl paints a different picture. Bunzl asserts that Graymark managed part of its business due to the value tissue program.[7] (Memo. in Supp., Doc. No. 82 pg. 11). Bunzl also asserts that it had nothing to do with the day-to-day operations of Graymark. Specifically, the Schultz Defendants decided, managed, and controlled: 1) Graymark's offices; 2) the location of the its offices; 3) the furnishing of its offices; 4) its business hours; 5) its hiring and firing of employees; 6) its payroll; 7) its accounting; 8) its payment of taxes; 9) its corporate credit cards; 10) its corporate vehicles; 11) its utilities; 12) its country club membership; and 13) its bank accounts. (Pl.'s Statement of Uncontroverted Material Facts, Doc. No. 83 ¶ 49-71).

In its August 7, 2006 Order, the Court held:

> Bunzl contends that because there is no evidence that it owed a fiduciary duty

---

[6] Bunzl also required that them to acquire office furnishings, equipment, technology, software, and employees. (Def.'s Statement of Material Facts, Doc. No. 85 ¶ 53, citing Ex. B. at pg. 102-03).

[7] For an overview of this value tissue program, see Order, Doc. No. 65 at. pg. 2-3.

to Graymark, it cannot be liable for breach of fiduciary duty. Graymark responds that Bunzl's fiduciary duty "arose from the longstanding relationship ... between Bunzl, the Schultzs and Graymark." (Memorandum in Opposition, Doc. No. 61, at 10).

The elements of a cause of action for breach of fiduciary duty are: "(1) the existence of a fiduciary relationship between the parties, (2) a breach of the fiduciary duty, (3) causation, and (4) harm." Grewell v. State Farm Mut. Auto. Ins. Co., 162 S.W.3d 503, 508 (Mo. Ct. App. 2005). "A fiduciary relationship may arise as a matter of law by virtue of the parties' relationship, e.g., attorney-client, or it may arise as a result of the special circumstances of the parties' relationship where one places trust in another so that the latter gains superiority and influence over the former." Shervin v. Huntleigh Securities Corp., 85 S.W.3d 737, 740-41 (Mo. Ct. App. 2002). Missouri courts have identified basic elements which are generally necessary to the establishment of a fiduciary relationship:

> (1) as between the parties, one must be subservient to the dominant mind and will of the other as a result of age, state of health, illiteracy, mental disability, or ignorance; (2) things of value such as land, monies, a business, or other things of value which are the property of the subservient person must be possessed or managed by the dominant party; (3) there must be a surrender of independence by the subservient party to the dominant party; (4) there must be an automatic or habitual manipulation of the actions of the subservient party by the dominant party; and (5) there must be a showing that the subservient party places a trust and confidence in the dominant party.

Chmieleski v. City Products Corp., 660 S.W.2d 275, 294 (Mo. Ct. App. 1983). A fiduciary relationship need not include all of these elements. A.G. Edwards & Sons, Inc. v. Drew, 978 S.W.2d 386, 394 (Mo. Ct. App. 1998). The existence of a business relationship does not, in itself, give rise to a fiduciary relationship. C & J Delivery, Inc. v. Emery Air Freight Corp., 647 F.Supp. 867, 875 (E.D. Mo. 1986). "[I]n most instances where a fiduciary relationship has been held to have existed from business relations, such findings have been in conformity with statutory requirements, or in furtherance of public policy." Chmieleski, 660 S.W.2d at 294-95.

Bunzl contends that Graymark has put forth no evidence that Graymark was not fully in control of its own business decisions. The Court disagrees. Although vague and conclusory, Graymark has put forth evidence of four of the five elements: (2) that Bunzl, the allegedly dominant party, managed Graymark's business (Schultz Affidavit, Doc. No. 42, attached exh. ¶¶ 28-29); (3) that Graymark surrendered its independence to Bunzl (Id.); (4) that there was a pattern of control over Graymark (Id. ¶ 29); and (5) that Graymark placed trust and confidence in Bunzl (Id. ¶¶ 27-29; Schultz Affidavit, Doc. No. 62, attached exh. A ¶¶ 17). The Court finds Chmieleski illustrative. In Chmieleski, the Missouri Court of Appeals reversed a jury verdict finding a breach of fiduciary duty in a franchise relationship. Chmieleski, 660 S.W.2d

> at 294-95. In explaining why there was no fiduciary relationship, the court pointed to a lack of evidence that the franchisor ran the store on a daily basis or was involved in management decisions of the franchisee. Chmieleski, 660 S.W.2d at 294. Here, there is evidence, although conclusory, that Bunzl was involved in the day-to-day operations of Graymark and participated in management decisions. There is insufficient evidence in the record to determine whether Bunzl owed a fiduciary duty to Graymark.

(Court's Order of August 7, 2006, Doc. No. 65 pg. 15-16). The Court sees no reason to depart from its previous holding. Although the Court questions whether Bunzl did anything more than exert its economic leverage during arm's length negotiations, Defendants have presented enough evidence to create a genuine issue of material fact about whether Bunzl's alleged participation in management decisions created a fiduciary duty.

Furthermore, the Court is not persuaded by Bunzl's argument that Defendants must prove all five elements of a fiduciary relationship. As the Court previously stated, a fiduciary relationship does not always require all five elements. (Order, Doc. No. 65, pg. 15, citing A.G. Edwards & Sons, Inc. v. Drew, 978 S.W.2d 386, 394 (Mo. Ct. App. 1998)). Additionally, the Court does not find its decision in CCA Global Partners, Inc. v. Yates Carpet, Inc. warrants a different result because it presented different factual circumstances. 2006 WL 2883376 (E.D. Mo. Oct. 5, 2006). Specifically, the CCA defendant was allowed to continue doing business outside the cooperative and no control of its internal decision making or its negotiations with other clients occurred. (Id. at *1-2).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Bunzl Distribution's Motion for Summary Judgment on Counts I and II of the Complaint (Doc. No. 81) is **GRANTED**.

**IT IS FURTHER ORDERED** that Counterclaim Defendant Bunzl Distribution's Motion

for Summary Judgment on Count III of the Counterclaim (Doc. No. 81) is **DENIED**.

Dated this 13th day of December, 2006.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE